UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ROBERT E. DERECKTOR, INC. :
:
        Plaintiff, :
: **MEMORANDUM**
v. : **OPINION AND ORDER**
:
M/Y INDEPENDENCE, her engines, boilers, : 15 CV 8257 (VB)
tackle, apparel, etc., in rem, and MATTHEW J. :
BRUDERMAN, in personam, :
:
        Defendants. :
--------------------------------------------------------------x
DUCKY-MOMO, LLC, :
:
        Plaintiff, :
v. :
:
ROBERT E. DERECKTOR, INC., E. PAUL : 15 CV 9372 (VB)
DERECKTOR, THOMAS E. DERECKTOR, :
MICAH TUCKER, ELIZABETH :
WEATHERBORN, in personam, and M/Y :
INDEPENDENCE, in rem, :
:
        Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Before the Court is the claim of Robert E. Derecktor, Inc. ("Derecktor"), for expenses of justice (i.e., expenses in custodia legis) that Derecktor incurred in maintaining the vessel M/Y Independence (the "Yacht") in a safe and seaworthy condition during its arrest pursuant to the Court's Order dated October 22, 2015.

      For the following reasons, the Court GRANTS Derecktor's claim for expenses of justice in the sum of $248,969.00. This amount will be set off from the final arbitration award in favor of Ducky-Momo, LLC ("Ducky-Momo"), which was issued on February 28, 2020, and confirmed by the Court on January 19, 2021.

1

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333.

**BACKGROUND**

The Court presumes the parties' familiarity with the factual and procedural background of this case, and recites herein only those facts necessary to adjudicate the pending claim for expenses of justice.

On October 20, 2015, Derecktor commenced the instant action by filing a verified complaint. In its complaint, Derecktor moved for a warrant of maritime arrest, which requested that the Court order the United States Marshal to arrest, attach, and take into custody the Yacht at Derecktor's shipyard in Mamaroneck, New York.

On October 22, 2015, the Court issued a warrant of maritime arrest, authorizing the United States Marshal to arrest the Yacht at Derecktor's shipyard. On October 29, 2015, the Court appointed National Maritime Services ("National Maritime") as substitute custodian of the Yacht and authorized it to make "normal and routine maintenance, repairs, and cleaning . . . in order to keep [the Yacht] seaworthy and marketable." (Doc. #12 at ECF 2).[1] The October 29 Order stated "[a]ny major and/or unanticipated repairs or renovations that may be required shall be undertaken only on further order from this Court." (Id.). The Order further explained that the "costs, and such other reasonable expenses, charged by [National Maritime] for the storage and safekeeping of the [Yacht], be deemed custodia legis fees." (Id.).

On December 10, 2015, Ducky-Momo moved, by order to show cause, for an order requiring further protection and preservation of the Yacht. The Court held a hearing on Ducky-

---

[1] The parties' motions are filed on the dockets for case numbers 15 CV 8257 and 15 CV 9372. Unless otherwise noted, references to "Doc. #___" refer to the docket in case number 15 CV 8257, and "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

2

Momo's motion on December 18, 2015. Finding that National Maritime was adequately protecting the Yacht, the Court denied Ducky-Momo's request for further protection and preservation. During the conference, the Court noted that, while the Yacht was arrested at the shipyard, Derecktor was "absorbing the cost of National Maritime." (Doc. #40 (December 18 Hearing Tr.") at ECF 18); (see id. at ECF 31 ("[T]he custodian is already adequately protecting the yacht and Derecktor is paying for that and of course Derecktor is going to do this additional work, because what are they going to do, hire somebody else to do it? That seems crazy.")). The Court further observed that Derecktor would likely add to its claim against Ducky-Momo the costs it incurred to maintain the Yacht during its arrest. The Court noted, however, it was not at that time deciding whether Derecktor was entitled to reimbursement for those costs.

On January 4, 2016, pursuant to the parties' stipulation, the Court entered a stay pending arbitration. In so doing, the Court retained jurisdiction as to "any issues concerning the custody, care and preservation of the Yacht or any issues pertaining to substitute security or bonding concerning the vessel." (Doc. # 38 at ECF 3).

On December 21, 2016, the AAA arbitration panel (the "panel") concluded the first phase of the arbitration and issued a "partial final award" granting Derecktor recovery of $56,106.75. In the partial final award, the panel explained:

> The parties agree upon very little, including who are parties and who are potentially parties. The sole exception to that is the request of the parties for the panel to issue a Partial Final Award dealing with the amount of money owed to [Derecktor] for work done and other services rendered to the Yacht. At the request of the parties, none of the many other outstanding issues are to be decided at this point.
>
> . . . .
>
> We find that [Derecktor] has performed services with respect to Independence and would be entitled to $56,106.75 if this were a final award. We find that the sum of $35,758.51 put forward by [Ducky Momo] is correct, in addition, we would award 50% of invoice 1123 ($40,696.47) or $20,348.24 (mainly consisting of dockage charges) for a total of $56,106.75.

3

(Doc. #85-2 at ECF 2–3).

By Order dated June 6, 2017, the Court granted in part and denied in part two motions filed by Ducky-Momo to approve substitute security, to release the Yacht from arrest, and for countersecurity. Thereafter, Ducky-Momo moved for partial reconsideration of the June 6, 2017, Order requiring Ducky-Momo post $331,000 in security to obtain release of the Yacht, which the Court denied on June 23, 2017. In the June 23 Order, the Court rejected Ducky-Momo's argument that the arbitration panel decided the maximum amount of damages Derecktor would be entitled to recover, including dockage and post-arrest expenses. Specifically, the Court noted: "[t]he arbitration panel's December 21, 2016, 'partial final award' and the record before this Court, are not at all clear regarding which dockage, custodial, and other post-arrest expenses claimed by Derecktor are included in the $56,106.75 'partial final award.'" (Doc. #75 at ECF 2).

Also on June 23, 2017, the Court issued an Order releasing the Yacht from arrest, directing Ducky-Momo to deposit $331,000.00 into the Court's registry as substitute security for Derecktor's in rem claims against the Yacht, and directing Derecktor to deposit $331,000.00 in the Court's registry as countersecurity for Ducky-Momo's counterclaims. (Doc. #76).

On March 6, 2018, the Court confirmed the partial final award granting Derecktor recovery of $56,106.75 for its claims against Ducky-Momo, but declined to enter judgment at that time in Derecktor's favor, concluding that entry of judgment on the partial final award was premature because the arbitration panel had not issued a comprehensive final award. (Doc. #100).

On April 9, 2018, Derecktor moved to disburse funds from the Court's registry to pay custodia legis expenses it incurred to keep the Yacht seaworthy and marketable between the date of the Yacht's arrest and the date of its release. On September 20, 2018, the Court denied

Derecktor's motion as premature. In denying the motion, the Court concluded: "It is possible Ducky-Momo's damages will exceed the expenses Derecktor alleges it incurred maintaining the Yacht. If Ducky-Momo is awarded any damages, it will be entitled to a set off against Derecktor's claimed expenses." (Doc. #111 at ECF 4).

On January 19, 2021, the Court issued an Opinion and Order confirming the final arbitration award in Ducky Momo's favor and directing the Clerk to release to Ducky-Momo the $331,000.00 that Ducky-Momo deposited into the Court's registry account as substitute security for the release of the Yacht in August 2017. However, the Court declined to enter judgment against Derecktor at that time due to Derecktor's pending claim for expenses of justice. The Court ordered further briefing on whether Derecktor had any outstanding expenses of justice claims in light of the Court's confirmation of the final award.

On January 25, 2021, pursuant to the Court's January 19 Opinion and Order, Ducky-Momo filed a letter opposing Derecktor's claim for expenses of justice. On March 4, 2021, after receiving an extension of time to respond, Derecktor filed a letter in support of its claim for expenses of justice. On the same day, Ducky-Momo replied to Derecktor's March 4 letter.

## DISCUSSION

I. <u>Expenses of Justice</u>

Derecktor argues it is entitled to $248,969.00 for <u>custodia legis</u> expenses it incurred in maintaining the Yacht in a safe environment and seaworthy condition while it was arrested.

The Court agrees.

Ordinarily, "services or property advanced to preserve and maintain . . . arrested vessels, furnished upon authority of the court, are allowable as <u>custodia legis</u> expenses." <u>Morgan Guar.</u>

Tr. Co. of New York v. Hellenic Lines Ltd., 593 F. Supp. 1004, 1010 (S.D.N.Y. 1984).[2] The costs of wharfage, discharging, and winterization may be appropriate expenses. See, e.g., Bassis v. Universal Line, S. A., 484 F.2d 1065, 1068 (2d Cir. 1973); Morgan Guar. Tr. Co. of New York v. Hellenic Lines Ltd., 593 F. Supp. at 1010.

Here, the Court authorized National Maritime to conduct "normal and routine maintenance, repairs, and cleaning . . . in order to keep [the Yacht] seaworthy and marketable." (Doc. #12 at ECF 2). In executing these duties, National Maritime employed the services of Derecktor, which, the Court observed, was reasonable given that the Yacht was already docked in Derecktor's shipyard. (See Doc. #40 at ECF 31). According to the declaration of Peter Smykowski, Derecktor's chief financial officer, Derecktor made payments to National Maritime and provided services to the Yacht at the direction of National Maritime from December 1, 2015, the date the Yacht was formally arrested, until September 12, 2017, the date Ducky-Momo provided substitute security in place of the Yacht. These services were clearly provided for the preservation of the Yacht and to the benefit of Ducky-Momo. And, in covering the costs and expenses charged by National Maritime, Derecktor was covering National Maritime's custodia legis fees. Derecktor is entitled to reimbursement for that coverage.

Ducky-Momo argues that Derecktor is not entitled to recover the expenses it incurred during the Yacht's arrest because it failed to obtain court approval before providing services and incurring expenses. The Court is not persuaded. The services performed by Derecktor during the arrest were done at the direction of National Maritime, which was not required to obtain Court approval prior to undergoing "normal and routine maintenance, repairs, and cleaning . . in

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

order to keep [the Yacht] seaworthy and marketable." (Doc. #12 at ECF 2). Although National Maritime <u>was</u> required to obtain Court approval prior to performing any "major and/or unanticipated repairs or renovations" (Doc. #12 at ECF 2), the Court is not convinced that any of the work Derecktor provided during the arrest was major and/or unanticipated.

Nor is the Court persuaded by Ducky-Momo's argument that Derecktor, having arrested the Yacht in bad faith based on an illegitimate lien, and having failed in its duty to preserve and maintain the Yacht, cannot demonstrate the expenses it incurred were necessary or reasonable. First, in his declaration in support of Derecktor's motion to disburse funds, G. Robert Toney, chairman of the company that owns National Maritime, averred the <u>custodia</u> <u>legis</u> expenses claimed by Derecktor—including fees paid by Derecktor to National Maritime, expenses incurred for services related to "winterization" of the Yacht, fees incurred for a "daily check" on the Yacht, and dockage fees—were reasonable and necessary for the safekeeping of the Yacht. (Doc. #103 ¶¶ 5–8). Given that National Maritime is an impartial third-party, appointed by the Court as a substitute custodian, the Court finds persuasive Toney's assertion that such fees and services were reasonable and necessary. Second, the arbitration panel's final award squarely addressed Ducky-Momo's claim for loss in value due to damage to the Yacht and awarded Ducky-Momo a total net recovery of $1,628,754.00 from Derecktor, which included reimbursement for unfinished or defective work. Thus, Ducky-Momo's argument that the panel's finding precludes Derecktor's recovery of expenses in <u>custodia</u> <u>legis</u> is unpersuasive.

Accordingly, for these reasons and the reasons set forth in Derecktor's letter of March 4, 2021 (Doc. #146), Derecktor is entitled to expenses of justice of $248,969.00 incurred in maintaining the Yacht in a safe environment and seaworthy condition while it was arrested. This sum will be deducted from the arbitration panel's final award of $1,628,754.00 in Ducky-

Momo's favor, confirmed by the Court on January 19, 2021.

II.     Payment Under Derecktor's Bond

In its January 19, 2021, Opinion and Order, the Court denied Ducky-Momo and Matthew J. Bruderman's request that it order Aspen American Insurance Company to make payment to Blank Rome LLP, attorneys for Ducky-Momo, under Derecktor's bond in the amount of $331,000.00, together with interest calculated from the date the bond was posted.  Specifically, the Court held that because it was not prepared to enter judgment against Derecktor at that time, payment under Derecktor's bond was premature.

The bond provides that if Ducky-Momo "recovers judgment in this action or if it is finally decided that [Derecktor] is liable for damages to the [Yacht]," the bond "shall stand as security for any and all costs and damages as may be awarded against [Derecktor] because of the claims asserted by [Owner]."  (Doc. #126-2 at ECF 2).  The Court is now prepared to enter judgment against Derecktor and in doing so will order that payment be made under Derecktor's bond in the amount of $331,000.00 with interest from the date the bond was posted.

## CONCLUSION

The Clerk is instructed to enter judgment in favor of plaintiff Ducky-Momo, LLC, against defendant Robert E. Derecktor, Inc., in the amount of $1,379,785.00, in case number 15 CV 9372.

In partial satisfaction of the judgment, Aspen American Insurance Company shall make payment to Blank Rome LLP, as attorneys for Ducky-Momo, under Derecktor's bond in the amount of $331,000.00, together with interest calculated from the date the bond was posted.

By May 12, 2021, counsel shall submit a <u>joint</u> letter regarding the status of the remaining parties and/or claims in the above-referenced actions.

Dated: April 28, 2021
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge